Veit *et al. v.* Graff.

---

## VEIT ET AL. *v.* GRAFF.

COUNTY TREASURER.—*Delinquent Taxes.*—The treasurer of a county is not authorized to levy upon personal property for the non-payment of taxes, before the third Monday in March, unless he have such evidence that the debtor is about to leave the county, without payment of his taxes, as would satisfy a jury that he had cause to fear such a course. Any levy by the treasurer before such date, and without sufficient cause, renders him liable for conversion.

APPEAL from the Floyd Circuit Court.

BUSKIRK, J.—This was an action for the wrongful taking and unlawful conversion of personal property. The action was commenced before a justice of the peace, from whose decision an appeal was taken to the circuit court, where the cause was, by the agreement of the parties, submitted to the court for trial, and resulted in a finding for the appellee. A motion for a new trial was overruled, and an exception taken. The property in controversy is a set of chairs. The appellants claim title thereto, under and by virtue of a sale by

the marshal of the city of New Albany, upon an execution in favor of the appellants, and against William Watkins.

There is no dispute that the appellants obtained a judgment against Watkins; that an execution issued thereon, and was placed in the hands of the said marshal, who levied the same upon the property in controversy; that the same was lawfully sold and purchased by the appellants, to whom the property was delivered.

The appellee justifies his seizure of the property on the grounds, that he was treasurer of Floyd county; that Watkins was delinquent for the taxes of 1865, 1866, 1867, and 1868, and that he levied upon the said property to satisfy, in part, the taxes so owing by the said Watkins. The levy was made by the treasurer on the 2d day of February, 1869. Did the treasurer have the right to make the levy at that time?

Taxes are a lien upon real estate from the 1st day of January. But the lien for taxes does not attach on personal property until the duplicate is delivered to the collector. Secs. 112 and 113, 1 G. & H. 99 and 100; *Barker* v. *Morton*, 19 Ind. 146. By sec. 78 of the assessment law, 1 G. & H. 94, the county auditor is required, in making out the duplicate for the current year, to add to the taxes for that year "the amount of taxes on all property returned delinquent for any preceding year and remaining unpaid, and a penalty of ten per centum on the amount of such tax."

Sections 93, 94, and 95 point out the manner in which the treasurer shall collect the taxes thus placed upon the duplicate.

Section 96 reads as follows: "In case any person shall refuse or neglect to pay the tax imposed on him, the county treasurer shall, after the third Monday of March, levy the same, together with ten per centum damages, and the costs and charges that may accrue, by distress and sale of the goods and chattels of such person who ought to pay the same, wheresoever the same may be found within the county."

By section 94, the treasurer is required to attend in the

several townships, between the 15th of October and the 15th of November, and after the 15th of November until the third Monday in March attend at his office, at the county seat, for the purpose of collecting such taxes.

Construing these sections together, it is quite obvious that the treasurer has no authority to make a levy on personal property for taxes before the third Monday of March. This construction is rendered quite certain by section 100 of said act, which reads as follows: "In case the treasurer shall have cause to fear that any person charged with tax is about to remove from the county without payment of his tax, he may, at any time before the third Monday of March, in like manner levy such tax, costs, and charges, by distress and sale."

By section 96, the treasurer is prohibited from making a levy until after the third Monday of March, but by section 100 he may make such levy at any time before the third Monday of March if he "shall have cause to fear that any person charged with tax is about to remove from the county without payment of his tax."

Who is to determine whether the treasurer has cause to fear that a taxpayer is about to remove from the county without the payment of his tax? We think it is to be determined by the court, when the legality of the levy is called in question. When the treasurer makes a levy for taxes before the third Monday of March, he must be prepared to show that the taxpayer, whose property he has levied on, is about to leave the county without the payment of his tax, and if he fails to make such proof, his levy will be held illegal and void. It is only on the condition that the taxpayer is about to remove without the payment of his tax, that the treasurer is authorized to make the levy before the third Monday of March.

It is not enough that the treasurer entertains such a fear, but he must have cause to fear; and it would not be safe to leave to the determination of the treasurer whether he had cause to entertain such fear. It would be liable to great

abuse. Such a construction would invest the treasurer with an uncontrolled discretion. This is analogous to a proceeding for surety of the peace, attachment, or *ne exeat.* In all of these cases the party must satisfy the court or jury that he had cause to fear that he was in danger of personal violence, or that the debtor was about to abscond from the State, under such circumstances as would authorize a proceeding in attachment or *ne exeat.* "An unauthorized sale of property by a collector of taxes amounts to a conversion, and the owner may maintain trover against him." 2 Hilliard Torts, 272. It was held by this court, in *Mason* v. *Roe*, 5 Blackf. 98; *Doe* v. *McQuilkin*, 8 Blackf. 335; and in *McQuilkin* v. *Doe*, 8 Blackf. 581, that "a sale of land for taxes is not valid unless the land was liable for all the taxes for which it was sold."

The next inquiry is, did the proof, in the case under consideration, show that the appellee had cause to fear that Watkins was about to leave the county without the payment of the taxes charged against him?

There was no proof offered on the subject. It was shown by the evidence that Watkins was assessed for the above named years with five thousand three hundred and seventy-five dollars worth of personal property, of which one thousand seven hundred dollars was for household furniture; that he resided in the city during the years above named; that the treasurer made no effort to collect such taxes by levy and sale of his property, except the property in controversy; that after the levy and sale of the property in question, Watkins stored in the city from three to five hundred dollars' worth of personal property, and that it remained in store for three months, when he removed it; and that during all this time the treasurer made no levy on such property.

But it is claimed that the taxes constituted a lien on the property in controversy, from the time the duplicate was delivered to the treasurer. Conceding that such lien existed, it cannot avail the appellee, for the reason that the time had not arrived for its enforcement, nor is it shown that such a

state of facts existed prior to such time as authorized him to enforce such lien before the third Monday in March.

We are of the opinion that the appellee showed no valid claim to the property in controversy, and that the court erred in overruling the motion for a new trial.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings not inconsistent with this opinion.

*M. C. Kerr* and *T. L. Smith,* for appellants.