Komisarow *v.* Lansky.

[No. 20,210. Filed September 28, 1966.]

*Marvin L. Komisarow* and *Komisarow and Baach,* of Fort Wayne, for appellant.

*Larry J. Burke* of *Kennerk, Dumas & Burke,* of Fort Wayne, for appellee.

PRIME, J.—This is a suit by Marc A. Lansky, the appellee, against Marvin L. Komisarow, the appellant, to recover the sum of $1750.00, which was one-half of an attorney fee obtained in a personal injury suit in which Lansky and Komisarow were the attorneys. The trial court awarded a judgment of $2,428.20 in favor of Lansky. This appeal followed.

The record shows the facts to be these: The appellant was maintaining a law office in Fort Wayne, Indiana. The appellee approached appellant with a proposition to move into his office and do work for space. This was agreed to by both lawyers. After a time the parties began to handle a few legal matters together and fees were shared. Concerning the case which resulted in the appeal before us, the record shows the following decisions and arrangements as narrated by the plaintiff, summarized as follows:

> About April or May, or June, 1961, Marvin Komisarow came into my office with a set of three ring small note paper which had Mr. Savage's name, address, and short factual description of an automobile accident, rear end collision, and asked me if I would be interested in handling the case on a fifty-fifty basis.

> In a short time, a matter of days, I contacted the Savages and asked them to come into the office and had conversations with them, discussed the facts, obtained accident and police reports, obtained their authorization and got medical and hospital reports, and wrote various doctors in Fort Wayne and outside asking for reports. I had further conversations with them and asked them to bring all bills for medical and other supplies, gasoline and hotel bills and to itemize them. I had phone calls with doctors and wrote letters to hospitals where doctors were pressing Savages for bills explaining that when the case was settled, the money would be available to pay bills.

> There were conferences and I negotiated with an insurance adjuster as the defendant had insurance. The question was raised as to assumption of risk and contributory negligence which I did not feel was major and there were other conferences with the adjuster and the Savages until the case was settled. The settlement was $10,500.00 and Mr. Komisarow informed me originally that it would be a ⅓ fee in case of settlement and fifty percent in event of trial.

About my fee, the first conversation was a short time after Mr. Komisarow asked me to pay $200.00 per month which was a week or two before the case was finally settled, about the last week or so of May or possibly the first week of June, 1962. This conversation was in Mr. Komisarow's office with his secretary in the outer office.

I put my head in the door of Mr. Komisarow's office and I said the Savage case would be concluded shortly and that I expected to share the fee with him and he nodded or showed by his demeanor general agreement. Mr. Komisarow said all right or O.K. We had no other conversation about fees prior to receipt of settlement check.

I had picked up the check in the adjuster's office. Mr. Komisarow asked me if I had the check and I told him I had. He asked if he could see it and I showed it to him and told him the Savages were coming in and I would cash the check, pay the Savages and split the fees with him. He said the Savages were his clients and that he would like to have the final conference with them and that he was the one distributing the funds of the Savages. I had no objection to this and he asked why his name was not on the check. I explained that in all correspondence his letterhead was used and that all letters were signed Komisarow and Lansky by Marc Lansky, and that the adjuster was aware he was on the case and it was used as a sort of pressuring device when we arrived at one figure, that I would have to mention it to Mr. Komisarow and obtain his agreement to the figure. He said nothing further about my name and the client's name being on the check, but he asked me for the check to give to the clients in final conference and I then endorsed the check and handed it to Mr. Komisarow. I asked him about the fees and sharing of them and he took the check and said not to worry about it we will share or settle the thing between ourselves.

Another day passed and I asked him again if he would settle with his client and share the fee. He said he had seen the client and paid them their share but decided since I was leaving that this would be his charge to me for sharing space and that he did not intend to share the fee with me. I learned later that Mr. Komisarow had seen the Savages on the 14th and had cashed the check and given them their share.

The appellant answered in denial to the complaint and also filed his cross-complaint alleging that he furnished office

space, furniture, secretary, supplies and law library for the use of the appellee from March, 1961 to May, 1962 and demanded the sum of $5600.00 for said services. To this the appellee answered that he rendered services in full payment for the use of the office and that the appellant accepted the same in full payment and discharge for the provision of office space.

The court made special findings of fact and conclusions of law and rendered judgment for the plaintiff-appellee in the sum of $2428.20 and further decreed that the defendant-appellant take nothing by his cross-complaint.

Motion for a new trial was filed setting out that the decision was not sustained by sufficient evidence and was contrary to law and that certain errors of law occurred in the admission and rejection of certain questions and answers.

The error assigned is the denial of the Motion for New Trial.

The principal contention of the appellant in this matter is that the court did not make a finding that there was a prior agreement between the parties for appellant to furnish appellee with law office space in return for services.

The appellant states that such an agreement was proved by appellee, by undisputed evidence and that the appellant himself confirmed the existence of the agreement. We agree with this contention and since the agreement was proved by sufficient evidence, this court, under Rule 2-30 may affirm a judgment below.

> "When special findings of fact are made in an action tried by the court without a jury and the court fails to find on some material issue of fact, on appeal from the judgment the reviewing Court may either affirm the judgment if it is supported by undisputed evidence, or vacate the judgment and remand the action for findings on the material issues of fact."

This action was not brought on the agreement however. This action is on a subsequent agreement to pay a share of

a fee in a specific case. The trial court did find the ultimate facts to be that both parties were practicing lawyers and that appellee was asked to handle one certain case for a definite fee. This was the issue formed here by the complaint and denial and such facts support the conclusions of law.

"The office of a special finding is the statements of the ultimate facts in issue." *Eckart* v. *Fort Wayne, etc., Traction Co.* (1914), 181 Ind. 352, 355-6, 104 N. E. 762; *City of Terre Haute* v. *Burns* (1917), 69 Ind. App. 7, 10, 116 N. E. 604.

"In determining whether the judgment is thus supported all presumptions are in favor of the finding rather than against it." *Kelley, Glover & Vale* v. *Heitman* (1943), 220 Ind. 625, 631, 44 N. E. 2d 981, 984, cert. den., 319 U. S. 762, 87 L. Ed. 1713, 63 S. Ct. 1320.

There was no specific amount of work which appellee was to render. In such a situation contracts must be construed in accordance with the probable intention of the parties. *McClain's Estate* v. *McClain* (1962), 133 Ind. App. 645, 654, 183 N. E. 2d 842, 847 reh. den. 184 N. E. 2d 281; *Botts* v. *Fultz, Adm.* (1880), 70 Ind. 396, 398.

"A construction . . . will be avoided . . . that is inequitable and gives an unfair or unreasonable advantage to one of the parties." *Western & Southern Life Ins. Co.* v. *Vale* (1938), 213 Ind. 601, 611, 12 N. E. 2d 350, 354.

The appellant urges that there was no proof of consideration. We believe that there was ample proof of consideration. The fact that appellee agreed to handle the case and do the work constitutes consideration. He consulted with the clients, had conferences and consummated a settlement. Moreover, the appellant filed no answer of want of consideration and the court found no failure of consideration. This is equivalent to a finding against the appellant on the question. *Kelley, Glover & Vale* v. *Heitman* (1942), *supra*, p. 630.

The action of the court in sustaining objections and questions asked of appellant is urged as errors of law at the trial. These questions concerned office expenses before and after the appellee came to the office, how much they had increased and what was to be paid by the appellee. The theory of these questions was to prove the counter-claim of the appellant. We believe that the court properly excluded the line of questioning for the reason that there was an express oral agreement that the office was to be provided in return for work to be performed by the appellee. There was no request that Lansky should pay any cash money until May, 1962. That is when the parties disagreed and the appellee moved out. Up until that time the agreement to accept work for a share of the overhead would be binding on appellant. The expense details would not tend to prove the reasonable value of the space provided and the services rendered. Under the counter-claim the measure of damages would be the reasonable value of that which was furnished. *Smith, Adm.* v. *Lotton* (1892), 5 Ind. App. 177, 31 N. E. 816; *Hancock Truck Lines* v. *Butcher* (1950), 229 Ind. 36, 43, 94 N. E. 2d 537, 541.

The theory of the cross-complaint was to collect rent for the entire length of time that the appellee occupied the office. This the appellant could not do because he was bound by the agreement to accept services for the space provided.

We cannot see any indication that the trial court made improper findings or that the conclusions of law were not properly supported.

The evidence clearly appears to be sufficient and the court arrived at a conclusion that a reasonable man or mind would reach. *Hinds* v. *McNair* (1956), 235 Ind. 34, 129 N. E. 2d 553; *Isenhour* v. *Speece* (1958), 238 Ind. 293, 150 N. E. 2d 749.

We therefore hold that the judgment is sustained by sufficient evidence and is not contrary to law.

Judgment affirmed.

Carson, J., and Wickens, P.J., concur, and Faulconer, J., concurs in result.

NOTE.—Reported in 219 N. E. 2d 913.